IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIKAL HALL,<br><br>   **Plaintiff,**<br><br>v.<br><br>ANTHONY WILLS, KEVIN REICHERT, LATOYA HUGHES, RYAN NOTHNAGLE, KELLY PIERCE, BRUMLEVE, LEWEY, KIEFER, H. HOUSE, GAETZ, BIG SHOW, SHIELD, CHILDERS, BURMAN, and WEXFORD HEALTH SOURCES, INC.,<br><br>   **Defendants.** | 24-1764-SMY<br><br>Case No. 24-cv-762-RJD |

# **MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

  Plaintiff Mikal Hall, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His original Complaint (Doc. 1) alleging Eighth Amendment deliberate indifference and failure to protect claims, as well as claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e, was dismissed without prejudice for failure to state a claim (Doc. 13). Hall was granted leave to file an amended pleading (*Id.*). In his Amended Complaint (Doc. 15), Hall alleges that officers used excessive force against him, retaliated against him for his

complaints, and failed to protect him. He alleges claims under the First, Eighth, and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Amended Complaint

In his Amended Complaint, Hall makes the following allegations: On November 14, 2023, while in his cell, Hall witnessed an inmate being taken out of the N-2 Housing Unit (Doc. 15, p. 5). The inmate was hog-tied and carried by his arms and legs (*Id.*). Hall inquired about the status of the inmate, but Correctional Officer Burman told him to shut up (*Id.*). Hall got into an argument with Burman and instructed Burman to watch how he talked to him (*Id.*).

After the encounter with Burman, Correctional Officer House and Correctional Officer "Big Show" approached Hall's cell and directed him to pack up because he was being moved to segregation (*Id.*). Although Hall claimed he had a right to speak, the

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections and Wexford Health Sources, Inc., to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court and these two entities.

officers continued to direct Hall to pack his cell (*Id.*). Hall spoke with a number of officials about the order, including an unnamed major, lieutenant, correctional officer, and mental health personnel (*Id.* at p. 6). Although they all agreed that Hall did not do anything warranting placement in segregation, they all instructed him to comply with the officers' orders (*Id.* at pp. 6-7). Hall refused to leave his cell.

Correctional Officer Lewey then approached his cell with a handheld camera and a tactical team (*Id.* at p. 7). Hall could not understand their instructions due to his hearing impairment (*Id.*). The officers sprayed him with mace several times. Hall contends that the officers were malicious in their use of mace because he did not pose a threat to the officers (*Id.*). Hall alleges that the tactical team consisted of Kiefer, Gaetz, Shield, Taylor, and Childers (*Id.* at pp. 13-15). He specifically alleges that Taylor sprayed him with mace even though Hall did not understand what the officers were ordering him to do (*Id.* at p. 14).

Hall was placed in a crisis watch cell that lacked cold water and a flushable toilet (*Id.* at pp. 7-8). There was feces, vomit, blood, and spit on the walls and toilet (*Id.*). The cell was covered in trash and food (*Id.* at p. 8). Hall remained in the cell for six days without a sheet or blanket (*Id.*). He also lacked access to toothpaste, a toothbrush, soap, wash cloth, bleach, or a mattress (*Id.*). His hearing aids and ADA watch were also confiscated (*Id.*).

On November 20, 2023, Hall was removed from the crisis cell and placed in another cell in the N-2 Housing Unit (*Id.* at p. 8). His clothes, property, and bedroll were not returned to him. He remained clothed in a green smock from crisis watch (*Id.*). He

received some of his items from an individual in the cellhouse who informed Hall that he had some of Hall's personal items (*Id.*). On November 27, 2023, Hall finally received his property, but several items were missing including his address book, medical file, ADA watch, and hearing aids (*Id.*). On November 28, 2023, Hall submitted a grievance about his argument with Burman, his refusal to leave the cell, the cell extraction, conditions of his cell, and missing property (*Id.* at pp. 10, 19-22). At some point, Hall spoke with Sergeant Brumleve who informed Hall that he personally threw some of his property away because Hall liked to report other officers' misconduct (*Id.* at p. 9).

Correctional Officer Burman threatened Hall that he would receive the "Menard treatment" if he continued to "run [his] mouth and snitch on us for doing our jobs." (*Id.*). Burman told Hall that he would place his head in a plastic bag filled with mace (*Id.*). Hall also alleges that Burman spread rumors that Hall was a homosexual, leading to threats from other inmates (*Id.*).

## **Preliminary Dismissals**

Simply put, Hall fails to state a claim against the individuals who responded to his grievances including Anthony Wills, Kelly Pierce, Ryan Nothnagle, and Latoya Hughes. He alleges that each grievance official was aware of the prison conditions he faced from the allegations in his grievance but denied his grievance. But these grievance officials cannot be liable for simply denying his grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). There are simply no allegations that they

4

were personally involved in Hall's placement in the crisis watch cell, nor did they participate in the alleged excessive force or confiscation of his ADA devices. Thus, any claim against Anthony Wills, Kelly Pierce, Ryan Nothnagle, and Latoya Hughes is **DISMISSED without prejudice**.

Hall also alleges that Kevin Reichert was responsible for the excessive force, retaliation, harassment, and ADA violations, but Hall fails to allege that Reichert was personally involved in any of the alleged violations. He merely alleges that Reichert was the warden at Menard and responsible for the welfare of inmates at the prison (Doc. 15, p. 2). Reichert cannot be held liable simply in his position as warden because *respondeat superior*, or supervisor, liability does not apply to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, any claim against Reichert is **DISMISSED without prejudice**.

Hall also alleges that a number of officials retaliated against him because of his verbal spat with Burman. He alleges that H. House wrote a false disciplinary ticket after Hall's verbal spat (Doc. 15, p. 13). He alleges that the tactical team members' cell extraction was an act of retaliation (*Id*. at pp. 14-15). He further alleges that "Big Show" placed him "behind the door" as an act of retaliation in response to Hall's verbal spat with Burman (*Id*. at p. 14).

"First Amendment retaliation cases require the [plaintiff] to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

5

"The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.* (citation omitted). But Hall fails to allege that his speech was constitutionally protected. His Amended Complaint alleges that he and Burman got into a verbal spat after Hall yelled out a question to passing officers about another inmate (Doc. 15, p. 5). Burman told him to shut up and Hall responded that he did not like the way Burman was talking to him (*Id.*). Although verbal complaints about prison conditions can amount to protected speech, here Hall yelled a question and then got into a verbal argument with Correctional Officer Burman. "Insubordinate, verbal remarks to prison staff are inconsistent with the status of a prisoner" and thus not protected by the First Amendment. *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017) (citing *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015). Further, backtalk, like the kind of backtalk Hall acknowledges he engaged in when reprimanded by Burman, does not rise to the level of protected speech. *See Kervin*, 787 F.3d at 835 ("backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected"). Hall called out a question about the status of an inmate and then proceeded to argue with Burman after Burman told him to shut up. His verbal spat does not amount to protected speech. Nor would defendants' actions in response to that argument (including the cell extraction, disciplinary ticket, and placement on crisis watch) amount to retaliation. Thus, Hall's retaliation claims stemming from his argument with Burman are **DISMISESD without prejudice**.

Hall also fails to state a claim as to his conditions of confinement in the crisis watch cell he was placed in after the cell extraction. Although he alleges the conditions in the

cell were "deplorable", Hall fails to allege that any official at the prison had knowledge of the conditions (Doc. 15, pp. 7-8). He alleges that Kevin Reichert subjected him to cruel and unusual punishment and improper living conditions (Doc. 15, p. 11) but fails to allege that Reichert was ever made aware of the conditions in Hall's cell. Hall alleges that "Big Show" should have known that "placing [him] behind the door" amounted to cruel and unusual punishment (Doc. 15, p. 14). He similarly alleges that as the acting director, Latoya Hughes should have known about the conditions Hall faced at Menard (*Id.* at p. 12). Prison officials violate the Eighth Amendment when they display deliberate indifference, which "is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). But there are no allegations to suggest that any defendant was aware of the conditions in the crisis cell. Although he alleges that officials should have known about the conditions he faced, there is simply no indication that any of the defendants actually knew about the state of Hall's crisis cell. *See, e.g.*, *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about the plaintiff's condition, not whether a reasonable official should have known"). Thus, Hall's claim against defendants for the conditions of his cell is **DISMISSED without prejudice**.

Hall also alleges that Wexford Health Sources, Inc. acted with deliberate indifference when it was made aware of Hall's hearing disability and lack of hearing aids (Doc. 15, p. 16). He alleges that Wexford failed to provide a reasonable accommodation for Hall. But Wexford can only be liable if its policies and practices led to the deliberate

7

indifference Hall experienced. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). Hall fails to point to any such policy or practice that led to the confiscation of his hearing aids. Thus, his claim against Wexford is **DISMISSED without prejudice**.

Finally, Hall alleges that Taylor participated in the use of force during the cell extraction, but Hall fails to identify Taylor as a defendant in the case caption. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Thus, any claim against Taylor is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** **First Amendment retaliation claim against Brumleve for destroying Hall's property in retaliation for Hall filing grievances.**
>
> **Count 2:** **First Amendment retaliation claim against Burman for threatening Hall with physical harm and spreading rumors about Hall in retaliation for Hall filing grievances.**
>
> **Count 3:** **Eighth Amendment excessive force claim against Gaetz, Shield, Childers, Kiefer, and Lewey for using mace during the extraction of Hall from his cell.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be**

**considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[2]

**Counts 1 and 2**

At this stage, Hall states a claim in Count 1 against Brumleve for confiscating his property. He similarly states a claim in Count 2 against Burman for threatening him with harm and spreading rumors about Hall that placed him in harm's way from other inmates. *See Beal v. Foster*, 803 F.3d 356, 358-59 (7th Cir. 2015); *Hughes v. Scott*, 816 F.3d 955, 956-57 (7th Cir. 2016) (calling mentally vulnerable individual names and threatening inmate could state a claim). Hall alleges that after the November 14, 2023 argument and cell extraction, he wrote a grievance about the event. After being transferred out of crisis watch, Hall learned that his property was missing. Burmleve informed him that he destroyed his property because Hall told on the officer's earlier misconduct (Doc. 15, p. 9). Hall alleges that Burman retaliated against him because Hall "snitch[ed]" on officers. At this stage, that is enough to state a retaliation claim against Burmleve and Burman for the actions they took after Hall wrote his grievance.

But as previously stated, any alleged retaliatory acts by any of the officers directly after Hall and Burman verbally argued, does not rise to the level of retaliation because Hall's spat does not amount to protected speech.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 3**

Hall's claim in Count 3, however, is unrelated to his claims in Counts 1 and 2. Although Hall stated in conclusory fashion that the tactical team's actions were in retaliation for his argument with Burman, his argument does not amount to protected speech. Thus, Hall only states an excessive force claim against the tactical team officers for the cell extraction. This claim is unrelated to his retaliation claims in Counts 1 and 2. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Count 3 into a separate case and will open a new case with a newly-assigned case number.

## Disposition

For the reasons stated above, Count 3 against Gaetz, Shield, Childers, Kiefer, and Lewey is **SEVERED** into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order; and
- The Amended Complaint (Doc 15).

As to the remaining claims, Count 1 shall proceed against Brumleve and Count 2 shall proceed against Burman.

The Clerk of Court shall prepare for Defendants Brumleve and Burman: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Hall. If a defendant fails to sign and return the Waiver of

10

Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Hall, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Hall, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Hall is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply

with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 22, 2024**

*/s/ Reona J. Daly*
REONA J. DALY
U.S. Magistrate Judge

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**